HATTIE E. WADE v. WILLIAM L. MAJOR and Allie Major, his wife, and W. J. Johnson, as Sheriff of Slope County, North Dakota.

(162 N. W. 399.)

**Mortgage foreclosure — sale — redemption — right of — lapse of one year from sale — extended — equity and justice — to meet demands of.**

After the lapse of a year from the date of a mortgage sale, the courts have full power to permit a redemption when equity and justice demand it.

Opinion filed March 31, 1917. Rehearing denied April 23, 1917.

Appeal from the District Court of Slope County, Hon. *W. C. Crawford*, Judge.

Affirmed.

*Theo. B. Torkelson*, for appellants.

The time to redeem from foreclosure and sale should not be extended for the parties to ascertain whether it will be for their interest to redeem; nor is it a legal cause for extending the time that the mortgagors did not come into knowledge of their rights until too late. Eastman v. Thayer, 60 N. H. 408; Cilley v. Huse, 40 N. H. 358.

The time prescribed in which to exercise the right of redemption acts as a limitation upon the mortgagors, and after that time has expired, the purchaser is entitled to a deed and the right is gone, and courts cannot extend the time beyond the statutory period. Carroll v. McCullough, 63 N. H. 98; Ross v. Mead, 10 Ill. 171; Lowry v. M'Ghee, 8 Yerg. 242; Campbell v. Leonard, 132 Ill. 232, 24 N. E. 65; Cross v. Weare, 62 N. H. 125; Vallandingham v. Worthington, 85 Ky. 83, 2 S. W. 772; Felton v. Smith, 84 Ind. 485; Taggart v. McKinsey, 85 Ind. 392; Carver v. Howard, 92 Ind. 173; Scheffermeyer v. Schaper, 97 Ind. 70; George v. Hart, 56 Iowa, 706, 10 N. W. 265; Newell v. Pennick, 62 Iowa, 123, 17 N. W. 433; Ex parte Bank of Munroe, 7 Hill, 177, 42 Am. Dec. 61; Littler v. People, 43 Ill. 188; Durley v. Davis, 69 Ill. 133; Silliman v. Wing, 7 Hill, 159; Gates v. Ege, 57 Minn. 465, 59 N. W. 495; Rorer, Judicial Sales, §§ 1148 et seq.; Traeger v. Mutual Bldg. & L. Asso. 3 Ill. App. 288; Styles v. Dickey, 22 N. D. 517, 134

N. W. 702; Nichols v. Tingstad, 10 N. D. 173, 86 N. W. 694; Wiltsie, Mortg. Foreclosure, p. 812; Little v. Worner, 11 N. D. 382.

In our state this period is extended only in one instance, and that is when the last day of the year period falls on Sunday. Styles v. Dickey, 22 N. D. 517, 134 N. W. 702; Nichols v. Tingstad, 10 N. D. 173, 86 N. W. 694; Wiltsie, Mortg. Foreclosure, p. 812; Little v. Worner, 11 N. D. 382, 92 N. W. 456; Kenmare Hard Coal, Brick & Tile Co. v. Riley, 20 N. D. 182, 126 N. W. 241; Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 1012; Murphy v. Teutsch, 22 N. D. 102, 35 L.R.A. (N.S.) 1139, 132 N. W. 435, Ann. Cas. 1913E, 1185.

Here the purchaser never promised to extend the time in which to redeem, and this fact renders this case dissimilar to many of the cases holding that a redemption can be made after the lapse of one year. In all these cases there has been some fact on which courts of equity have acted, like a promise or something done to lead to the belief that the time was actually extended. In such cases it is but just that courts of equity intervene in the interest of justice. But no such condition exists here. Kenmare Hard Coal, Brick & Tile Co. v. Riley, 20 N. D. 182, 126 N. W. 241; Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 1012; Murphy v. Teutsch, 22 N. D. 102, 35 L.R.A.(N.S.) 1139, 132 N. W. 435, Ann. Cas. 1913E, 1185; Summerville v. Sorrenson, 23 N. D. 460, 42 L.R.A.(N.S.) 877, 136 N. W. 988.

"One who sells real property has a special or vendor's lien thereon independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer." Comp. Laws 1913, § 6861.

The defendants in any event have a vendor's lien on the property, for in this court of equity all questions of an equitable nature arising out of the foreclosure should be considered and equal justice done to all parties. Defendant may counterclaim against plaintiff any matter arising out of the same transcation. Comp. Laws 1913, § 7449.

*J. P. Cain,* for respondent.

One is not prevented from redeeming where he acts promptly upon his first information respecting a foreclosure and sale of his land, where through accident, ignorance, and excusable mistake, he has allowed a few hours to lapse over the statutory period. Equity grants relief from such a condition where it entails no actual loss to the other

party. Kopper v. Dyer, 59 Vt. 477, 59 Am. Rep. 742, 9 Atl. 4; 2 Pom. Eq. Jur. 823, 824.

Forfeitures are odious, and courts struggle against them. This is the rule of equity, that a forfeiture shall not bind when the thing can be taken afterward, or compensation can be made for it. 2 Pom. Eq. Jur. ¶ 833; Cage v. Russell, 2 Vent. 352, 86 Eng. Reprint, 481; Adams v. Haskell, 10 Wis. 123; Pierson v. Clayes, 15 Vt. 93; Bostwick v. Stiles, 35 Conn. 195.

In such matters the term "accident" includes casualty arising from unforeseen occurrences without the fault of the parties. Daggett v. Mendon, 64 Vt. 323, 24 Atl. 242; Massucco v. Tomassi, 78 Vt. 188, 62 Atl. 57; Salsbury v. Black, 4 Am. St. Rep. 634, note; Houston v. Curran, 101 Ill. App. 203; O'Callaghan v. Cooper, 5 Ves. Jr. 117, 31 Eng. Reprint, 501; Sandford v. Flint, 24 Mich. 26; Foley v. Grand Hotel Co. 57 C. C. A. 629, 121 Fed. 509; Warren v. Stinson, 6 N. D. 293, 70 N. W. 279; Seaman v. Riggans, 2 N. J. Eq. 214, 34 Am. Dec. 200; Wheeling & E. G. R. Co. v. Triadelphia, 58 W. Va. 487, 4 L.R.A. (N.S.) 321, 59 S. E. 499; Page v. Higgins, 5 L.R.A. 152, and note, 150 Mass. 27, 22 N. E. 63; German F. Ins. Co. v. Gueck, 6 L.R.A. 835, and note, 130 Ill. 345, 23 N. E. 112; Riegel v. American L. Ins. Co. 11 L.R.A. 857, and note, 140 Pa. 193, 23 Am. St. Rep. 225, 21 Atl. 392; 16 Cyc. 39B.

The common law always protected parties against the consequences of certain accidents, but in cases not within the protection of the common law, equity has jurisdiction to grant relief. 10 R. C. L. pp. 288, 292, 328, 335, ¶¶ 32, 37 39, 75, 84; 27 Cyc. 1817, ¶ D; Stephenson v. Kilpatrick, 166 Mo. 262, 65 S. W. 773; 35 Century, Dig. p. 2842, note 1706; 5 Words & Phrases, p. 4539, "Mistake;" 4 Words & Phrases, p. 3386, et seq. "Ignorance;" 1 Words & Phrases, pp. 70, et seq. "Accident;" Murphy v. Teutsch, 22 N. D. 102, 35 L.R.A.(N.S.) 1139, 132 N. W. 435, Ann. Cas. 1913E, 1185.

The allegation of counterclaim of defendants is not against any party to this action, and therefore has no place here. Comp. Laws 1913, § 7499.

One in redeeming as owner must pay the amount of the sale with interest and any other prior lien held by the purchaser against the personal property, but not a second mortgage or other claim held by the

purchaser, where he is not personally liable. Hays v. Cretin, 102 Md.
695, 4 L.R.A.(N.S.) 1039, 62 Atl. 1028; MacKenna v. Fidelity Trust
Co. 184 N. Y. 411, 3 L.R.A.(N.S.) 1068, 112 Am. St. Rep. 620, 77 N.
E. 721, 6 Ann. Cas. 471; Shaylor v. Cloud, 39 L.R.A.(N.S.) 1171, and
note, 63 Fla. 608, 57 So. 666, Ann. Cas. 1914A, 277; Styles v. Dickey,
22 N. D. 515, 134 N. W. 702.

Robinson, J. In December, 1912, the plaintiff made to the first-
named defendants a purchase-money mortgage on 320 acres of land in
Billings county (W$\frac{1}{2}$ 15–134–100), to secure $1,100, and interest.
The mortgage was promptly foreclosed by a sale of the land to the mort-
gagees on February 26th, 1914, for $1,287.55. In the latter part of
February, 1915, to redeem from the foreclosure sale, the plaintiff went
from her home in Michigan to Medora, in Billings county, and paid
the sheriff of that county the sum necessary to redeem. That was on
February 24th, 1915. Then she learned that to redeem she must go to
Amidon, the county seat of Slope county, which had been part of Bill-
ings county until a month previous. At Medora she sent a telegram to
her mortgagees, offering them a bonus of over $500 for an assignment of
their sale certificate, and they made no answer, because they had made
a conditional contract to transfer the land to another party. Then, on
February 26th, she went to Dickinson, consulted a lawyer, and had him
make out redemption papers, and started in haste to Amidon by way of
New England. At this place she was forced to wait until the morning
of February 27th, 1915. Then she went to Amidon and quickly put
her redemption papers and money into the hands of the sheriff. He
accepted and retained the money, but declined to make to her a redemp-
tion certificate or deed, claiming that time to redeem expired on the day
previous. She then commenced this action to redeem, and judgment
was duly given in her favor by Judge Crawford.

The defendants appeal to this court, insisting on two points. The
first is that, as a condition of being allowed to redeem, the plaintiff
should be required to pay them about $550 that she does not owe them,
which point has no merits.

The second point is that the court is powerless to decree a redemp-
tion because it was a day too late. To redeem the plaintiff incurred a
great expense. She risked her health and life in driving over the cold
drifting snows when her driver lost his way. She put her redemption

money into the hands of two sheriffs in the best of good faith, but, by reason of accidents which she could not foresee or prevent, she got to the last sheriff a few hours after the lapse of the year from the date when her mortgagees had caused her property to be sold to themselves for much less than its value. Now it would seem that if courts cannot give relief under such circumstances, it is time for the judges to go to bed and cover their heads in shame. The statute gives a mortgagee only a conditional right to become a purchaser of land at his own foreclosure sale. He must act fairly and in good faith, so as to avoid oppression and to take no advantage of his mortgagor through the forms of the law. He is entitled to only his money, with interest at the enormous rate of 12 per cent, even though he gets it a few days before or after the year of redemption. He has no right to avail himself of the law to get something for nothing, or to speculate on the misfortunes of his debtor.

To mitigate the asperities of the law and to grant relief against forfeitures, penalties, accidents, and mistakes,—this has always been the special function and the duty of courts of equity. This court is not disposed to give the pound of flesh, because it is so denominated in the bond. The judgment of the district court is highly commended; and it is affirmed. This is without prejudice to any claim the defendants may have for a vendor's lien.

CHRISTIANSON, J. (dissenting). I am unable to concur in the conclusion reached by my associates in this case. The purported statement of facts in the majority opinion is, however, so inaccurate and incomplete that in order to present my views it becomes necessary to state the facts more fully.

It appears from the evidence that the defendant William L. Major was the owner of the land involved herein. Lee Wade (the plaintiff's husband) owned a hotel property in Hillsdale, Michigan, covered by two mortgages; one for $2,500, and one for $3,500. In December, 1912, the defendant William L. Major and Lee Wade entered into a written agreement whereby Major agreed to exchange the land involved herein for the hotel property. Under the terms of the exchange agreement and as part consideration for the land, Lee Wade and his wife (the plaintiff) executed and delivered to William L. Major a mortgage for $1,100 upon the land involved herein. As further consideration

for such land, Lee Wade, under the terms of the written exchange agreement, executed and delivered to the defendant Major a note for $250, payable on June 1st, 1913. And, under the terms of the written exchange agreement, Lee Wade, as a further consideration for the land, agreed to pay certain past-due interest on the $2,500 mortgage against the hotel property and the 1912 taxes against such property.

The defendant Major conveyed the land by warranty deed to Lee Wade and Hattie E. Wade, and Lee Wade conveyed the hotel property to the defendant. But it appears from the evidence, without dispute, that Wade never paid the $250 note, nor did he pay the past-due interest on the $2,500 mortgage or the 1912 taxes against the hotel property as he had agreed to do in the exchange agreement, and as a result, the defendant Major was compelled to pay interest amounting to $150 and taxes amounting to $118.50.

It is undisputed that the mortgagors defaulted in the payment of the $1,100 mortgage, and that the foreclosure involved in this action was thereupon instituted. The plaintiff came to Medora three days before the year of redemption expired for the purpose of making redemption. She conferred with the clerk of the district court, who prepared certain redemption papers for her. The clerk of the district court was under the impression, and so advised her, that by making redemption she would receive a certificate of redemption in her own name and become owner of the land, and in this way cut off her husband's interest therein, and thereby eliminate any rights which his creditors might have against the land. After consulting an attorney, the clerk came to the conclusion that he was in error, and he therefore suggested that if possible she obtain an assignment of the sheriff's certificate of foreclosure, and thereupon she sent a telegram to the defendant Major, offering to purchase the sheriff's certificate. This telegram is referred to in the majority opinion, as follows: "At Medora she sent a telegram to her mortgagees offering them a bonus of over $500 for an assignment of their sales certificate." This statement, in my opinion, is wholly incorrect. The telegram which appears in the record speaks for itself. Here it is:

William Major,

　　Mattoon, Ill.,

　　Will you assign certificate of sale of Wade mortgage on payment of

$1,432 with balance of $500 to be paid when land is sold or mortgaged *will pay amount due on sale* if you will assign me certificate answer at once by day letter.

Hattie E. Wade.

From this telegram, therefore, it appears that what the plaintiff actually did was to offer to pay Major the amount due on the $250 note, and the taxes and interest which Major had paid upon the Hillsdale, Michigan, property. These were all obligations which Lee Wade had agreed to pay in the exchange agreement, and constituted part of the original purchase price of the premises involved in this action. The amount due Major on these three items at the time plaintiff sent this telegram aggregated $549.55.

There is no contention that the foreclosure is in any manner irregular. The evidence shows that the defendant Major is, and during all times involved in this action was, a resident of the state of Illinois. There is not a word in the record to indicate that he misled the plaintiff or her husband, or sought to obtain for himself any personal advantage. It is true, as stated in the majority opinion, he made a conditional contract to transfer the land to another in the event he became owner through the foreclosure proceedings. But a significant fact (which the majority opinion fails to state) is, that the only consideration which Major was to receive, under the terms of such contract was the amount of the foreclosure certificate and an amount equal to that due him from Wade upon the $250 note, and the taxes and interest paid by Major upon the hotel property. The contract also contained the following provision: "This contract is made subject to the right of any party who has a right to redeem, to redeem from the said mortgage sale, and this contract shall be wholly null and void if anyone redeems." Does this evidence any intent or desire on Major's part to injure or prejudice the plaintiff, or obtain for Major any unconscionable advantage? Obviously not. On the contrary, it negatives such intent, and is the most persuasive evidence of Major's good faith. All Major sought was the money due him,—the balance due on the purchase price, and which Wade had failed to pay.

I am aware of the salutary rule, universally recognized, that a power of sale in a mortgage must be exercised by the mortgagee fairly and in

good faith, and that an exercise of such power if in bad faith may be set aside, even though the forms of law have been complied with. See Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390. I am also aware of the rule, equally salutary, which permits an owner or redemptioner to set aside a sheriff's deed obtained as a result of any fraud or deception practised upon him by the purchaser. Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 1012; Murphy v. Teutsch, 22 N. D. 102, 35 L.R.A. (N.S.) 1139, 132 N. W. 435, Ann. Cas. 1913E, 1185; Freeman, Executions, 3d ed. § 316. These rules, which meet with my unqualified approval, have no application to the facts in the instant case. Plaintiff does not ask relief because of any wrongful or oppressive act on the part of Major. Her claim for relief is based solely on the ground that because of certain conditions arising on the last day or two preceding the expiration of the period of redemption, she failed to exercise the right within the statutory period.

I am unable to find a single authority which holds that a court of equity may extend the statutory period of redemption under such circumstances.

The supreme court of Michigan in considering a similar question in Cameron v. Adams, 31 Mich. 426, 427, said: "If the sale had been made under the decree of a court, the authorities cited on the argument would bear very strongly in favor of relieving complainant. Courts of equity have large powers for relief against the consequences of inevitable accident in private dealings, and may doubtless control their own process and decrees to that end. But we think there is no such power to relieve against statutory forfeitures. Where a valid legislative act has determined the conditions on which rights shall vest or be forfeited, and there has been no fraud in conducting the legal measures, no court can interpose conditions or qualifications in violation of the statute. The parties have a right to stand upon the terms of the law. This principle has not been open to controversy, and is familiar and elementary."

In discussing the same subject Wiltsie (Wiltsie, Mortg. Foreclosure, 3d ed. § 1146) said: "Although the parties to a mortgage may, by proper agreement, either before or after foreclosure, arrange for the extension of the time wherein redemption may be made, yet a court

of equity, on a statutory foreclosure, has no power to extend the time allowed in which to redeem, even in those cases where redemption within that time has been prevented by inevitable accident, misfortune, or unforeseen calamity; for, although courts of equity have large powers for relief against the consequences of inevitable accident in private dealings, and may doubtless control their own process and decrees to that end, they have no such power to relieve against statutory foreclosures; and for that reason are powerless by their decrees to extend the time for a redemption on a statutory foreclosure, where redemption is not made within the time provided, no matter what the cause of such failure may be." Freeman (Freeman, Executions, 3d. ed. § 316) says: "The right to redeem must be exercised within the statutory period. After the expiration of this time, the purchaser's right to a conveyance of the property becomes absolute, and the time will not be extended by the courts, except under special circumstances showing that a fraud would otherwise be perpetrated upon the defendant. The defendant ordinarily cannot, by any act of his own, as by filing a bill to redeem, prolong the time designated by statute. Physical or mental debility or minority do not afford sufficient ground in equity for allowing a party to redeem after the expiration of the statutory period. One who, through culpable negligence or ignorance of the law, fails to redeem within the statutory period, has no claim to relief in chancery."

In Little v. Worner, 11 N. D. 382, 92 N. W. 456, this court held that the period of redemption was not extended by the failure of the purchaser to furnish a verified statement of the value of the use and occupation of the premises during the year of redemption.

A court of equity is not vested with arbitrary powers. It may not assume to decide the facts of a controversy according to its own standard of right, independently of fixed rules.

On the contrary, a court of equity is governed in its judicial functions by doctrines and rules as fixed as those governing the actions of a court in a suit at law.

If this were not so, every decision would be a virtual arbitration, and all certainty in legal rules and security of legal rights would be lost. Pom. Eq. Jur. 3d ed. §§ 43, 47.

It is a maxim that "equity follows the law," and the courts of

equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.  10 R. C. L. p. 382.

But, assuming that this court has power, under the facts in this case, to permit a redemption after the statutory period has expired, can it be said that it is just and equitable to permit such redemption to be made without requiring plaintiff to pay the balance due Major upon the purchase price of this land?  I think not.  In this connection, it should be mentioned that the evidence shows that Lee Wade has gone through bankruptcy.  Hence, Major has no chance of enforcing the claims by obtaining personal judgment against Wade.

The majority opinion recognizes the fact that Major probably has a valid claim upon the land for the balance due on the purchase price, as the concluding sentence of the opinion provides that the affirmance of the judgment "is without prejudice to any claim defendants may have for a vendor's lien."  One of the recognized grounds for the exercise of jurisdiction by courts of equity is to prevent a multiplicity of suits, where some legal or equitable right is invaded or threatened. And one of the well-settled principles of equity jurisprudence is "that when a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue."  Pom. Eq. Jur. 3d ed. § 181. And "where a court of equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general, proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law."  Pom. Eq. Jur. 3d ed. § 231.  And in this state, where all distinction between actions at law and suits in equity has been abolished (Comp. Laws 1913, § 7355), these fundamental equitable principles apply with more than ordinary force, and no excuse can exist for the failure of a court, in an equitable action, to settle all rights involved and award complete relief.

It seems to me that the most elementary principles of justice require that the judgment in this case, in any event, provide that the plaintiff, in order to redeem, be required to pay Major the money due upon the purchase price of the land.  The majority opinion pretends to be based

upon equitable principles, and yet it refuses to recognize and apply some of the most fundamental principles of equity jurisprudence.

BRUCE, Ch. J. I concur in the dissenting opinion of Mr. Justice Christianson.

On Petition for Rehearing (Filed April 23, 1917).

ROBINSON, J. In this case there is a motion for rehearing which presents nothing new and nothing that has not been fairly considered. The appellants are mortgagees who have foreclosed their mortgage and bid in the property, and in doing that they were bound to act fairly and in good faith, and not oppressively, and when the plaintiff sought to redeem, it was their duty to accept his redemption money, and not to try to insist on their pound of flesh. They have unjustly made the plaintiff a great deal of needless cost in this case, and hence they have no equities that appeal to justice. When a mortgagee forecloses and bids in the property of his mortgagor, he is bound to do so fairly and in good faith, and when his redemption money is offered him, even though it be a day or an hour beyond the time stated in his bond, he is entitled only to his money with interest. The motion for a rehearing is denied.